UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

HOMETOWN FOLKS, LLC,               )
                                   )
        *Plaintiff*,               )
                                   )        Case No. 1:06-cv-81
v.                                 )        Judge Mattice
                                   )
S&B WILSON, INC., WILLIAM L.       )
WILSON, and SALLY B. WILSON,       )
                                   )
        *Defendants*.              )

## MEMORANDUM AND ORDER

Plaintiff Hometown Folks, LLC asserted claims against Defendants S&B Wilson, Inc., William L. Wilson, and Sally B. Wilson for breach of contract, breach of the duty of good faith and fair dealing, specific performance, and indemnification.  (Court Doc. 97.) The Court determined that the breach of contract, the breach of the duty of good faith and fair dealing, and the indemnification claims, except for those portions related to attorney's fees and expenses associated with the instant litigation, would be tried to a jury.  The issues of specific performance, attorney's fees incurred during the underlying transaction, and expenses incurred by Plaintiff related to the instant litigation were reserved for the Court's determination after the conclusion of the jury trial.

On December 11, 2007, the jury returned a verdict. After the verdict, Plaintiff renewed its request for specific performance, attorney's fees, and expenses.  The Court will now address these issues.

## I.    STANDARDS OF REVIEW

### A.    Specific Performance

Specific performance is an equitable remedy. Whether specific performance should be awarded is a determination that lies within the discretion of the trial court and depends on the facts of each individual case. *Shruptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979). No plaintiff is entitled to specific performance as a matter of right. *Leathers v. Deloach*, 204 S.W. 633, 635 (Tenn. 1918).

Generally, a court will not award specific performance unless an award of damages would be an inadequate remedy. *Shruptrine*, 597 S.W.2d at 730. Where damages are practicable and would be adequate, the Court should not compel specific performance but should leave the plaintiff to its legal remedies. *Lane v. Associated Housing Developers, LLP*, 767 S.W.2d 640, 642 (Tenn. Ct. App. 1988) (citing H. Gibson, *Gibson's Suits in Chancery* § 402 (W. Inman 6th ed. 1982)). Because real property and franchises are both unique, damages are usually inadequate and such contracts are generally eligible for specific performance. *See*, *e.g.*, *McGaugh v. Galbreath*, 996 S.W.2d 186, 191 (Tenn. Ct. App. 1998).

### B.    Attorney's Fees

"Tennessee follows the 'American Rule' that, in the absence of contract, statute or recognized ground of equity, attorney's fees are not recoverable from the unsuccessful party in a lawsuit." *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979). However, when a provision in the contract provides for attorney's fees in the event litigation arises, the prevailing party is entitled to enforcement of the contract pursuant to its terms.

*Wilson Mgmt. Co. v. Star Distrib. Co.*, 745 S.W.2d 336, 338 (Tenn. 1985). "When the contract provides that a prevailing party is entitled to recover its attorney's fees for enforcing the contract, the trial court has no discretion regarding whether to award attorney's fees or not." *Seals v. Life Investors Ins. Co. of America*, 2003 WL 23093844, *4 (Tenn. Ct. App. Dec. 30, 2003) (internal quote omitted). However, the trial court does have discretion with regard to the amount of the attorney's fees award. *Id.*

## II.    FACTS

On October 4, 2005, the parties entered into a Purchase and Sale Agreement ("Agreement") whereby Plaintiff would purchase Defendants' eleven Burger King restaurants. (Court Doc. No. 127-6.)  On March 21, 2006, Defendants terminated the Agreement pursuant to Sections 9.1(d) and 9.1(g) of the Agreement.[1] (Court Doc. No. 127-19.)  Section 9.1 states:

> This Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time prior to the Closing:
>
> ...
>
> (d)    By Seller if the Closing shall not have occurred on or before the Outside Date; provided that Seller shall not be entitled to terminate this Agreement pursuant to this clause if the failure of Seller to fulfill any of its obligations under this Agreement shall have been the reason that the Closing shall not have occurred on or before said date . . .
> (Court Doc. No. 127-6.)
>
> ...
>
> (g)    By Seller if Burger King requires in excess of $100,000 of remodeling and repair expenditures in order to provide the Burger King Consent.

---

[1]    For a more complete recitation of the facts, *see* the Court's Memorandum and Order Denying Summary Judgment [Court Doc. 171].

(Court Doc. 127-6 at 33.)

Following Defendants' termination of the Agreement, Plaintiff brought the instant lawsuit alleging breach of contract, breach of the duty of good faith and fair dealing, and requesting specific performance and indemnification. (Court Doc. 1.) On summary judgment, the Court ruled that portions of the Agreement were ambiguous and that a jury would need to determine the parties' intent with regard to the meaning of the disputed provisions. (Court Doc. 171.)

The Court held a twelve day jury trial. Much of the evidence at trial related to the parties' intent with regard to the meaning of the disputed contract terms, particularly Sections 9.1(d) and 9.1(g). In support of its claim that Defendants breached their duty of good faith and fair dealing, Plaintiff also presented evidence showing that Defendants were less than diligent in carrying out their responsibilities pursuant to the Agreement.

The jury returned a verdict on a special verdict form provided by the Court. (Court Doc. 241.) As to Section 9.1(d), the jury found, as Defendants had advocated, that the "Outside Date" had passed when Defendants terminated the Agreement. (Court Doc. 241 at 1.) It also found that the reason that the transaction had not closed by the Outside Date was not due to Defendants' failure to fulfill any of their obligations under the Agreement. (*Id.* at 2.) The jury further found, however, that Defendants should be estopped from terminating the Agreement pursuant to Section 9.1(d). (*Id.* at 3.)

As to Section 9.1(g), the jury found, as Defendants had advocated, that Burger King required more than $100,000 in repair and maintenance expenditures in order to grant its consent to the transaction. (*Id.* at 4.) The jury also found that Defendants should not be

estopped from terminating the contract pursuant to Section 9.1(g). (*Id.* at 5.) By operation of the terms of the Agreement, the jury's findings as to Section 9.1(g) necessarily mean that Defendants properly exercised their right to terminate the Agreement.

As to the duty of good faith and fair dealing, the verdict form instructed the jury that:

> Because you have found that Defendants could properly terminate the contract under one of the termination provisions, by law, Defendants' termination of the Agreement on March 21, 2006 was not a breach of the duty of good faith and fair dealing. However, actions leading up to the termination of the Agreement or course of conduct in carrying out the terms of the Agreement could be a breach of the duty of good faith and fair dealing.

(*Id.*) The jury found that Defendants had violated the duty of good faith and fair dealing such that it was a breach of contract. (*Id.* at 6.) Thus, the jury explicitly found that some action, or pattern of actions, by the Defendants prior to their termination of the Agreement violated their duty of good faith and fair dealing.

The jury awarded Plaintiff $190,907.27 for Defendants' breach of the duty of good faith and fair dealing. During trial, Plaintiff submitted an exhibit entitled "Summary of Fees and Expenses in Connection with the Transaction (other than expenses of counsel)" which stated that Plaintiff had incurred $190,907.27 in connection with the transaction. (Pl's. Trial Ex. 39.) The jury, therefore, effectively restored the Plaintiff to the same financial situation (with the exception of attorney's fees) it was in before it signed the Purchase and Sale Agreement.

## III.  ANALYSIS

Section 10.10 of the Agreement states that it "shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee without regard to its

choice of law principles." (Court Doc. 127-6 at 36.) The parties agree that the Court is to apply Tennessee law in this case.

Prior to the commencement of the trial, the Court specifically reserved a number of issues to be decided by the Court after the jury returned its verdict. These issues included: (1) whether Plaintiff was entitled to specific performance of the Agreement, (2) whether Plaintiff was entitled to indemnification for expenses, including attorney's fees, arising out of the instant litigation, and (3) whether Plaintiff was entitled to indemnification for attorney's fees related to the transaction. (Court Doc. 243.) The Court will now address each of these issues.

### A. Specific Performance

Because the Agreement was for the sale of eleven Burger King restaurant franchises and the land on which they were located, specific performance is an available remedy. *See Shruptine v. Quinn*, 597 S.W.2d 728 (Tenn. 1979) (stating that specific performance is an available remedy on a failed real estate transaction); *DeBauge Brothers, Inc. v. Whitsitt*, 512 P.2d 487, 489 (Kan. 1973) (holding that franchises are unique and specific performance is therefore an available remedy).

### 1. *Whether to award specific performance is within the discretion of the Court.*

Plaintiff claims that it is entitled to specific performance of the Agreement because the jury found that Defendants had breached the duty of good faith and fair dealing "such that it was a breach of contract." (Court Doc. 244 at 19-20.) Plaintiff argues that Tennessee courts award specific performance "as a matter of course" when a breach of contract is found on a contract involving real estate. (*Id.* at 15.) This argument ignores

long-standing Tennessee precedent stating that specific performance is not available to any party as of right. *Leathers v. Deloach*, 204 S.W. 633, 635 (Tenn. 1918). In Tennessee, the award of specific performance is within the discretion of the trial court upon consideration of all of the facts and circumstances surrounding the transaction. *Id.*

Generally, a finding that a party breached the duty of good faith and fair dealing enables the non-breaching party to request specific performance. *See*, *e.g.*, *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs*, 864 A.2d 387, 400 (N.J. 2005) (awarding specific performance on breach of the duty of good faith and fair dealing). However, as Plaintiff notes, Tennessee law is silent on this issue. Moreover, Plaintiff has been unable to cite a case from any jurisdiction where specific performance was awarded based on a breach of the duty of good faith and fair dealing after a jury explicitly found that the defendant properly exercised its right to terminate the contract. The Court therefore concludes that, under Tennessee law, although specific performance is an available remedy upon a finding of the breach of the duty of good faith and fair dealing, whether to actually award specific performance is within the discretion of the Court.

2. *The jury's findings do not weigh in favor of an award of specific performance*.

In determining whether to award specific performance, the Court must consider the entirety of the proof at trial and the findings made by the jury. *See Gilson v. Gillia*, 321 S.W.2d 855, 866 (Tenn. Ct. App. 1958) (holding that an award of specific performance lies within the discretion of the trial court after considering all of the facts and circumstances of the transaction). "When legal and equitable issues to be decided in the same case depend on common determinations of fact, such questions of fact are submitted to the jury,

and the court in resolving the equitable issues is then bound by the jury's findings on them." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 408 (6th Cir. 2003). In this case, the jury was given a special verdict form that guided it through the specific factual determinations it was to make. (Court Doc. 241.) The jury's answers to the questions on the verdict form constitute formal findings on issues of ultimate fact and the Court is bound to apply the law according to those findings. *Portage II and Portage IV v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1520 (6th Cir. 1990).

The jury found that Burger King required more than $100,000 in repair and maintenance expenditures in order to grant the Burger King Consent. (Court Doc. 241 at 4.) This finding necessarily means that Defendants were entitled to terminate the Agreement under Section 9.1(g). (Court Doc. 127-6 at 33.) The jury also found that Defendants should not be estopped from terminating pursuant to Section 9.1(g). (Court Doc. 241 at 5.) The necessary legal implication of these two findings is that Defendants properly executed their right to terminate the Agreement pursuant to Section 9.1(g).

The evidence at trial supported this finding. The parties did not dispute that Defendants had actually spent in excess of $100,000 on repair and maintenance of the restaurants. The issue at trial was whether Burger King required Defendants to spend in excess of $100,000 in order to grant the "Burger King Consent." This was not a question about the amount of money spent by the Defendants. It was a question of contract interpretation that the jury resolved in favor of the Defendants.

Because the jury had found that Defendants' termination of the Agreement was proper pursuant to Section 9.1(g) of the Agreement, under Tennessee law, the termination itself could not be a breach of the duty of good faith and fair dealing. *See Wallace v. Nat'l*

*Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1997) ("Performance of a contract according to its terms cannot be characterized as bad faith"). The jury was therefore instructed that "by law, Defendants' termination of the Agreement on March 21, 2006 was not a breach of the duty of good faith and fair dealing. However, actions leading up to the termination of the Agreement or course of conduct in carrying out the terms of the Agreement could be a breach of the duty of good faith and fair dealing." (Court Doc. 241 at 6.) The jury was then asked: "Not considering Defendants' termination of the Agreement on March 21, 2006, did Defendants breach their duty of good faith and fair dealing such that it constituted a breach of contract?" The jury responded in the affirmative and awarded Plaintiff $190,907.27 for the Defendants' breach of the duty of good faith and fair dealing. (Court Doc. 241 at 7.)

This portion of the jury's verdict was also supported by the evidence presented at trial. Plaintiff presented evidence showing that Mrs. Wilson told her agent that she did not want to close the transaction and that she was laughing when he asked her why. There was evidence suggesting that Mrs. Wilson considered stalling the deal until the Outside Date had passed so that she could terminate the Agreement. Plaintiff presented evidence which showed that Defendants delayed in turning over financial documentation on the restaurants' operation in violation of the Agreement's disclosure provisions. Other evidence tended to show that Defendants were slow to respond, if they responded at all, to proposals put forth by the Plaintiff to deal with environmental issues that arose during due diligence.

Plaintiff argues that "Defendant[s] should not be permitted to frustrate Plaintiff's expectations and its right to receive the benefits of the Agreement, and then avoid specific

performance by terminating the Agreement based on a technicality." (Court Doc. 244 at 20.) Plaintiff claims that the Court should award specific performance because "[a]lthough the jury determined that the Defendants had a technical basis for terminating the contract, the jury unequivocally determined that the Defendants breached their duty of good faith and fair dealing such that it constituted a breach of contract." (*Id.* at 19-20.) These arguments suggest that the jury's finding of breach of the duty of good faith and fair dealing should somehow override its finding that Defendants' properly executed their right to terminate the Agreement.

The Court is bound by, and must give effect, if possible, to every finding of the jury and cannot infer that the jury intended one finding to outweigh another. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 408 (6th Cir. 2003). The Court cannot, therefore, presume that the jury intended any of its findings to be dominant and instead must seek to harmonize all of the jury's findings. The Court also must presume that the jury followed the Court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The jury was specifically instructed that it could not find a breach of the duty of good faith and fair dealing based upon the Defendants' termination of the Agreement, but only upon actions leading up to the termination, or course of conduct in carrying out the terms of the Agreement. (Court Doc. 241 at 6.) Thus, the Court cannot presume that the jury's finding regarding breach of the duty of good faith and fair dealing was meant to override or otherwise impact its finding regarding the propriety of Defendants' termination of the Agreement.

If the jury had intended to find that Defendants' breach of the duty of good faith and fair dealing affected Defendants' right to terminate the Agreement pursuant to Section 9.1(g), the jury could have found that Defendants were estopped from invoking that section. However, the jury explicitly found that Defendants should not be estopped from terminating the Agreement pursuant to Section 9.1(g). (Court Doc. 241 at 5.) This finding necessarily means that the jury was not convinced that Plaintiff relied on any misstatement or concealment by the Defendants related to whether Burger King required over $100,000 in repair and maintenance expenditures in granting its consent to the transaction. There is nothing in the jury verdict suggesting a link between the finding of breach of the duty of good faith and fair dealing and Defendants' right to terminate the Agreement pursuant to Section 9.1(g). In fact, based on the Court's instruction, it is evident that the jury did *not* consider Defendants' termination of the Agreement in finding that Defendants breached their duty of good faith and fair dealing.

Accordingly, and for the reasons explained above, the jury's verdict does not weigh in favor of granting specific performance. The purpose of the duty of good faith and fair dealing is to "honor the contracting parties' reasonable expectations" and to "protect the right of the parties to receive the benefits of the agreement they entered into." *Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). By finding that Defendants properly terminated the Agreement, the jury effectively found that Defendants were excused from their obligation to close the transaction. Plaintiff can therefore have no reasonable expectation of a closing, and therefore has no legal right to force a closing through specific performance. Were the Court to award specific performance, it would be impermissibly negating an explicit finding of the jury.

3.    *Plaintiff is adequately compensated by the jury's award of damages*.

The preferred remedy in a breach of contract case is the legal remedy of monetary damages. *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979). Specific performance is not appropriate when a party can be adequately compensated by damages. *Lane v. Associated Housing Developers, LLP*, 767 S.W.2d 640, 642 (Tenn. Ct. App. 1988). Damages are not ordinarily adequate compensation for a breach of contract involving real estate or franchises. *See Shruptine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979) (noting that real estate is unique and damages are therefore normally inadequate compensation); *DeBauge Brothers, Inc. v. Whitsitt*, 512 P.2d 487, 489 (Kan. 1973) (holding that franchises are unique).

Upon its finding that Defendants breached their duty of good faith and fair dealing, the jury was instructed to determine what amount Plaintiff had proven to a reasonable degree of certainty that is suffered as a result of Defendants' actions. (Court Doc. 241 at 7.) The jury awarded Plaintiff $190,907.27, the precise amount that Plaintiff had established that it spent on expenses associated with the transaction. (*Id.*; Pl's Tr. Ex. 39.) The jury therefore effectively restored Plaintiff to the financial position that it held prior to entering into the Agreement.

Although Plaintiff presented evidence of over $2,000,000 in lost profits suffered as a result of Defendants' termination of the Agreement, the jury awarded Plaintiff only its expenses. The jury's damages award therefore evidences a desire to compensate Plaintiff for Defendants' failure to abide by its duty of good faith and fair dealing in carrying out the terms of the Agreement without punishing Defendant for terminating the Agreement. The

damage award is entirely consistent with the jury's findings on the interpretation of the Agreement (as explained above) and the parties' obligations under the Agreement. Based on the unique factual circumstances of this case, the Court finds that Plaintiff is adequately compensated by the jury's award of damages and that specific performance is not an appropriate remedy.

4. _The equities of the case do not weigh in favor of awarding specific performance_.

The Supreme Court of Tennessee has held:

> Equity, in decreeing specific performance, requires not only that the contract be just and equitable in its provision, but that the consequences of specific performance likewise be equitable and just. One of the general rules formulated and followed is that this equitable relief will not be granted if, under the circumstances of the case, the result of the specific enforcement of the contract would be harsh, inequitable, oppressive, or result in an unconscionable advantage to the plaintiff, even though the complainant has no intention of taking an unfair advantage, and even though the contract my be valid and enforceable at law.

_T.J. Moss Tie Co. v. Hill_, 235 S.W.2d 587, 588-89 (Tenn. 1951) (italics omitted).

All parties to this action are sophisticated business people. They negotiated the terms of the Agreement and agreed to be bound by those terms. There is no allegation that the Agreement, or any portion thereof, including Section 9.1(g), was procured by fraud or any other misdeed. The jury found that Defendants properly exercised their right to terminate according to Section 9.1(g). (Court Doc. 241 at 4-5.) To require a party to close a transaction that it properly terminated pursuant to a freely negotiated contractual provision is neither equitable nor just. If the Court were to force Defendants to close the transaction, which the jury explicitly found they were not required to do under the terms of the Agreement, the result would be harsh and inequitable to Defendants

Moreover, the purpose of specific performance is to compel a breaching party to perform that which is required under the contract. *See Stewart Title Co. of Memphis v. First American Title Ins. Co.*, 44 F. Supp. 2d 942, 955 (W.D. Tenn. 1999). In this case, the jury explicitly found that Defendants had properly terminated the Agreement pursuant to Section 9.1(g) and therefore had no obligation to close the transaction. To award specific performance and force Defendants to close the transaction would therefore be contrary to the purpose of the remedy and, accordingly, contrary to the principles of equity.

"In every case where specific performance is asked, the question must be whether the exercise of the power of the court is demanded to subserve the ends of justice, and unless the court is satisfied that it is right in every respect, it will refuse to interfere." *T.J. Moss Tie Co. v. Hill*, 235 S.W.2d 587, 588-89 (Tenn. 1951) (italics omitted). As discussed above, the Court must defer to the jury's finding that Defendants had no obligation to close the transaction. Moreover, the Court finds that the jury's award of damages adequately compensates Plaintiff for Defendants' breach of contract and that the balance of the equities weigh against specific performance. Accordingly, the Court **DENIES** Plaintiff's request for specific performance.

### B. Attorney's Fees and Other Litigation Expenses

Tennessee follows the "American Rule" that attorney's fees are not recoverable unless provided for by contract. *State v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979). Plaintiff claims that it is entitled to two different categories of attorney's fees and expenses: (1) expenses, including attorney's fees, incurred in connection with the instant litigation, and (2) attorneys fees incurred by Plaintiff in connection with the underlying transaction.

Under Tennessee law, the court's purpose in interpreting a contract is to ascertain and give effect to the intent of the parties. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). The best indication of the parties' intent is the words used in the contract which are to be given their plain and ordinary meaning. *Id.* The circumstances in which the words are used "is always relevant and usually indispensable." *Higgins v. Oil, Chemical & Atomic Workers Int'l. Union*, 811 S.W.2d 875, 879 (Tenn. 1991). "The intention of the parties is to be determined by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." *Penske Truck Leasing Co., L.P. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990).

1. *Plaintiff's expenses incurred in pursuit of the instant litigation*

Plaintiff claims that it is entitled to its expenses, including attorney's fees, incurred in its pursuit of the instant litigation pursuant to Section 7.2(b) of the Agreement. Section 7.2(b) states:

> Seller and Principals, jointly and severally, hereby agree to indemnify, defend and hold harmless Purchaser and its officers, managers and members from and against all Damages asserted against or incurred by Purchaser or such officers, managers, and members, directly or indirectly, arising out of or resulting from: (i) breach of any representation, warranty, covenant or agreement of Seller or Principals contained in or make pursuant to this Agreement . . . the other Transaction Documents or the transactions contemplated hereby or thereby or any facts or circumstances constituting such a breach . . . .

(Court Doc. 127-6 at 30.) The term "Damages" is defined in Section 7.2(a) as "demands, claims, actions or causes of action, assessments, losses, damages, liabilities, costs and

-15-

expenses, including, without limitation, interest, penalties and reasonable attorney's fees, costs and disbursements and expenses." (*Id.* at 29.)

"Attorney's fees and costs are recoverable under an express indemnity contract 'if the language of the agreement is broad enough to cover such expenditure.'" *Power & Telephone Supply Co, Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 933 (6th Cir. 2006) (quoting *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985)). The contractual language must be construed as written and enforced according to its plain and unambiguous terms. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

The Court is bound by the jury's findings when ruling on equitable issues post-trial. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 408 (6th Cir. 2003). The jury found that some act prior to termination of the Agreement or Defendants' course of conduct in carrying out the terms of the Agreement breached their duty of good faith and fair dealing. (Court Doc. 241 at 6.) In Tennessee, the duty of good faith and fair dealing is implied in every contract. *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987). "Parties to a contract are bound 'to act in work and deed, in a responsible manner.'" *Dunn v. Matrix Exhibits, Inc.*, 2005 WL 2604048, *3 (Tenn. Ct. App. Oct. 13, 2005) (quoting *Williams v. Maremont Corp.*, 776 S.W.2d 78, 81 (Tenn. Ct. App. 1992)). By entering into a contract, parties implicitly undertake a good faith duty to refrain from taking any action, intentionally or purposefully, that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995).

Defendants contend that a breach of the implied duty of good faith and fair dealing does not fall within the language of Section 7.2(b). (Court Doc. 247 at 6.) Although the duty of good faith and fair dealing does not explicitly appear in Section 7.2(b), as it is implied in every contract, it falls within the "representation, warranty, covenant or agreement" clause. *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987). Thus a breach of the duty of good faith and fair dealing is a breach of the Agreement and Section 7.2(b) is triggered. The Court finds unpersuasive Defendants' attempt to distinguish between breaches of explicit contractual terms and implicit contractual duties.

Defendants also argue that there is a causation element implicit in the language of Section 7.2(b). (Court Doc. 247 at 7.) Defendants claim that Plaintiff is only entitled to damages that it can show "arose out of or resulted from the breach the jury found of the duty of good faith and fair dealing." (*Id.*) Plaintiff did not respond to this argument.

The plain language of Section 7.2(b) states that Defendants are responsible only for the expenses "arising out of or resulting from" Defendants' breach. In interpreting contracts, the Court is to attempt to give effect to every provision and render none meaningless. *Park Place Center Enters., Inc. v. Park Place Mall Assocs., L.P.*, 836 S.W.2d 113, 116 (Tenn. Ct. App. 1992). Although Plaintiff argued other theories, the only breach of contract that the jury found was Defendants' breach of their duty of good faith and fair dealing. (Court Doc. 241 at 6.) The jury explicitly found that Defendants' termination of the Agreement was not a breach of contract. (Court Doc. 241 at 4-5.) The causation element of Section 7.2(b) would be meaningless if the Court were to award Plaintiff all of its trial expenses. Pursuant to Section 7.2(b), Plaintiff is therefore entitled to

recover only those expenses that it can show arose out of or resulted from Defendants' breach of the duty of good faith and fair dealing.

Although the jury found that Defendants should be estopped from terminating the Agreement pursuant to Section 9.1(d), Defendants are not required to indemnify Plaintiff for its expenses arising out of that claim. Plaintiff's complaint alleged that Defendants breached the Agreement by failing to close the transaction by the Outside Date. (Court Doc. 97 at 11.) Defendants responded by claiming that they properly terminated the Agreement pursuant to two independent provisions, Section 9.1(d) and 9.1(g). (Court Doc. 103 at 2.) If Defendants' termination of the Agreement was justified by either one of these two provisions, then Plaintiff's breach of contract claim relating to improper termination was defeated. Because the jury found that Defendants properly terminated pursuant to Section 9.1(g), its finding as to Section 9.1(d) is irrelevant. Because the jury's finding that Defendants were estopped from terminating pursuant Section 9.1(d) does not constitute a finding of breach, under the plain language of Section 7.2(b) Plaintiff is not entitled to indemnification for its expenses that arise out of or result from its pursuit of this claim.

Accordingly, the Court **GRANTS** Plaintiff's request for expenses, including attorney's fees, arising out of the instant litigation with the caveat that Plaintiff is entitled to only those expenses that arose out of, or resulted from, the Defendants' breach of the duty of good faith and fair dealing. Plaintiff **SHALL NOT RECOVER** its expenses arising out of or resulting from its claim that Defendants' termination of the Agreement was a breach of contract. Plaintiff bears the evidentiary burden of establishing that such expenses arose out of Defendants' breach of the duty of good faith and fair dealing. *Waste Conversion*

*Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 783 (Tenn. 2000) (holding that the ultimate burden of proof in contract dispute does not shift and plaintiff has burden of proving each element of its claim); *Cummings & Co. v. Mascari*, 402 S.W.2d 719, 727 (Tenn. App. 1965) (plaintiff bears burden of proof with regard to whether claimed attorney's fees are subject to contract provisions).  Plaintiff also bears the burden of showing that its attorney's fees were reasonable.  *Wilson Management v. Star Distributors*, 745 S.W.2d 870, 873 (Tenn. 1988).

2.      *Attorney's fees incurred during underlying transaction*

Plaintiff claims that it is entitled to recover its attorney's fees incurred during the underlying transaction pursuant to Section 10.3 of the Agreement.  Section 10.3 states:

> **Remedies.**   In the event of a default under this Agreement or the Transaction Documents, the aggrieved party may proceed to protect and enforce its rights by a suit for damages, suit in equity, action at law or other appropriate proceeding, whether for specific performance, or for an injunction against a violation of any terms hereof or thereof or in aid of the exercise of any right, power or remedy granted thereby or by law, equity, statute or otherwise.  The foregoing shall include, but shall not be limited to, allowance for recovery by the aggrieved party of all of its fees and expenses and disbursements incurred by it in connection with the transactions contemplated hereby and in the Transaction Documents, including, without limitation, the reasonable fees and expenses of its counsel, accountants, agents and representatives employed by it.

(Court Doc. 127-6 at 34.)  Plaintiff claims that, because the jury found that Defendants had breached their duty of good faith and fair dealing such that it was a breach of contract, the Court is required to award it attorney's fees incurred in connection with the transaction. (Court Doc. 244 at 10.)   Defendants argue that Section 10.3 does not apply to this case because the jury did not find that Defendants had "default[ed]" under an explicit term of the Agreement.  Defendants claim that a breach of the implied duty of good faith and fair

dealing is qualitatively different than a breach of an explicit contractual term. (Court Doc. 245 at 8-9.)

By its plain language, Section 10.3 allows for recovery of attorney's fees by the aggrieved party that brings suit after a "default under this Agreement." In ruling on equitable issues post-trial, the Court is bound by the jury's findings. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 408 (6th Cir. 2003). The jury found that Defendants breached their duty of good faith and fair dealing such that it was a breach of contract. (Court Doc. 241 at 6.) Therefore, the Court must determine whether the jury's finding of breach of the duty of good faith and fair dealing was a "default" under the Agreement. The term "default" is not defined in the Agreement. Black's Law Dictionary defines "default" as "[t]he omission or failure to perform a legal or contractual duty." Bryan A. Garner, *Black's Law Dictionary* 449 (8th ed. 1999). Therefore, Section 10.3 is triggered when there has been an omission or failure to perform a legal or contractual duty under the Agreement.

Because, as discussed above, the duty of good faith and fair dealing is a legal duty implied in every contract, the jury's finding that Defendants breached the duty of good faith and fair dealing is a finding that Defendants "defaulted" on the Agreement. Defendants' breach of the duty of good faith and fair dealing therefore triggers Section 10.3 and Plaintiff is entitled to recover its reasonable attorney's fees incurred in the underlying transaction.

Accordingly, the Court **GRANTS** Plaintiff's request for attorney's fees arising out of the underlying transaction.

## IV.  CONCLUSION

For the reasons discussed above, Plaintiff's request for specific performance is **DENIED**.  Plaintiff's request for expenses, including attorney's fees, arising out of the instant litigation is **GRANTED** with respect to such expenses as Plaintiff can demonstrate arose out of, or resulted from, Defendants' breach of the duty of good faith and fair dealing. Plaintiff's request for attorney's fees incurred in the underlying transaction is **GRANTED**. The amount of expenses and fees that Plaintiff may recover according to the Court's rulings in this Memorandum and Order **SHALL BE DETERMINED** in a later proceeding upon a separate motion of Plaintiff for such expenses and fees, supported by such documentary and testimonial evidence as Plaintiff may deem necessary to sustain its burden of proof, both as to amount and reasonableness of its fees.

SO ORDERED this 3rd day of April, 2008.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE