UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| HOMETOWN FOLKS, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-81 |
| | ) | Judge Mattice |
| S&B WILSON, INC., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Defendants' Motion for Judgment as a Matter of Law or,
Alternatively, Motion for Remittur [Court Doc. 294].  For the reasons explained below, the
instant motion will be **DENIED**.

## I.    STANDARD

As this is a diversity action, the Court applies the standard of review used by
Tennessee courts in evaluating Defendants' Rule 50 motion for judgment as a matter of
law.  *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.2d 171, 176 (6th Cir. 1996).  Accordingly,
the Court must:

> take the strongest legitimate view of the evidence in favor of
> the opponent of the motion, allow all reasonable inferences in
> his or her favor, discard all countervailing evidence, and deny
> the motion where there is any doubt as to the conclusions to
> be drawn from the whole evidence.  A verdict should not be
> directed during, or after, trial except where a reasonable mind
> could draw but one conclusion.

*Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1256, 1248 (6th Cir. 1984) (quoting *Holmes
v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977)).

"A jury verdict should not be remitted by a court unless it is beyond the maximum

damages that the jury reasonably could find to be compensatory for a party's loss."

*Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000). "A trial court is within its

discretion in remitting a verdict only when, after reviewing all evidence in the light most

favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from

passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial

conscience of the court." *Id*.

## II.    BACKGROUND AND PROCEDURAL HISTORY

The facts of this case have been exhaustively summarized in the Court's earlier

Memoranda and Orders. (*See* Court Docs. 171, 251 & 290.) Only the facts necessary to

resolve the instant motion are set forth below.

The instant action was tried to a jury over twelve days. At the conclusion of

Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 50(a). The Court granted Defendants' motion as to

Plaintiff's claim of waiver but denied it in all other respects. Defendants renewed their Rule

50 motion at the close of their case, and the Court again denied the motion.

After the close of all evidence, the Court instructed the jury on the law that was to

govern its deliberations and presented the jury with a Verdict Form which instructed the jury

to make a number of factual findings. (Transcript at 2079-2113; Court Doc. 241.) The jury

found that Defendants properly terminated the Agreement because Burger King required

in excess of $100,000 of remodeling and repair expenditures in order to provide the Burger

King Consent, thereby invoking the termination provision in Section 9.1(g) of the

Agreement. (*Id*. ¶¶ 4-5.) The jury also found that Defendants' actions leading up to the

-2-

termination of the Agreement, or that their course of conduct in carrying out the terms of the Agreement, had breached their duty of good faith and fair dealing so as to constitute a breach of the contract.  (*Id*. ¶ 6.)  The jury awarded Plaintiff $190,907.27 for the breach of the duty of good faith and fair dealing.  (*Id*. ¶ 7.)

## III.    ANALYSIS

The instant motion is a renewal of Defendants' Rule 50 motion for judgment as a matter of law.  In addition, in the alternative (and for the first time) Defendants move the Court to remit the jury's award of damages.  Each of these motions will be addressed in turn.

### A.    Defendants Are Not Entitled to Judgment as a Matter of Law on the Breach of the Duty of Good Faith and Fair Dealing Claim.

Defendants ask the Court to enter judgment as a matter of law in their favor on the breach of the duty of good faith and fair dealing claim.  The duty of good faith and fair dealing protects the parties' reasonable expectations as to how the contract will be executed as well as the parties' right to receive the benefits of their agreement.  *Goot v. Metropolitan Gov't of Nashville and Davidson County*, 2005 WL 3031638 (Tenn. Ct. App. 2005).  Defendants argue that Plaintiff was not denied any benefit of the Agreement for two reasons: (1) because the jury found that Defendants properly terminated the Agreement and therefore Plaintiff had no reasonable expectation of a closing; and (2) Plaintiff was unwilling to close on the Agreement regardless of the Defendants' termination.

1.     *The pleadings and arguments made at trial are irrelevant*.

In the instant motion, Defendants repeatedly refer to allegations contained in the Plaintiff's Amended Complaint as well as arguments made by Plaintiff's counsel at trial – neither of which is relevant.  Initially, the Court notes that the Final Pre-Trial Order entered by the Court on December 7, 2007 supplanted the pleadings. (Court Doc. 234 at 19.)  If any document was relevant at this stage in the litigation, it would be the Final Pre-Trial Order rather than the Amended Complaint.

Even the Final Pre-Trial Order, however, is largely irrelevant at this stage in the litigation.  "Once an answer is filed, relief depends not on the matters within the precise issues of the pleadings from a technical standpoint, but by the evidence actually received." *Williams v. United States*, 405 F.2d 234, 238 (10th Cir. 1968); *see also Nagler v. Admiral Corp.*, 248 F.2d 319, 328 (2nd Cir. 1957) ("it is the duty of the court to grant the relief which the facts before it require; the legal theories which the parties may have suggested or relied upon may be of help to the court, but do not control."); *see also Equity Captial Co. v. Sponder*, 414 F.2d 317, 319 n.1 (10th Cir. 1969) ("Except for a default judgment, the prayer of the complaint is irrelevant under Fed. R. Civ. Proc. 54(c) as to relief.  This depends on the facts on the hearing or trial, not the prayer.") Because this case has already proceeded to trial and a verdict has been rendered, the case is no longer defined by the allegations set forth in the pleadings.  Rather, the Court must consider the extensive evidence presented over the course of the trial in ruling on the instant motion.

Defendants also point to Plaintiff's counsel's arguments (or lack thereof) at trial to support their contentions.  Plaintiff's counsel's arguments, however, are also irrelevant.

-4-

The jury was specifically instructed by the Court that the arguments of counsel were not evidence. (Trans. at 2082.) Instead, as the jury was instructed, the jury was to "take the law that [the Court] give[s] you, apply it to the facts, and decide if plaintiff, Hometown Folks, LLC, proved that defendants, S&B Wilson, Inc., William L. Wilson, and Sally B. Wilson are liable by preponderance of the evidence." (Trans. at 2080.) The Court must presume that the jury followed its instructions. *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001). Accordingly, the Court must presume that the jury's verdict was not based on the arguments of counsel.

In rendering their verdict, the jury is not bound by any particular theory of the case put forth by one of the parties. While an advocate clearly hopes that his or her argument will influence the jury in fulfilling its duty, the jury makes its factual findings based on the evidence before it and is in no way constrained by the particular theory of the case advanced by counsel. Accordingly, neither the pleadings nor counsels' arguments at trial are relevant at this stage in the litigation.

2. *Defendants' argument that, as a matter of law, they could not have breached the duty of good faith and fair dealing because they were entitled to terminate the Agreement is not properly raised in a Rule 50(b) motion.*

Defendants contend that, once the jury found they had properly terminated the Agreement, "Plaintiff had no reasonable expectation under the Agreement that a closing would (or should) occur" and "because the Plaintiff was not denied any benefit of the Agreement by the action or inaction of S&B Wilson, S&B Wilson is entitled to judgment as a matter of law that it did not breach any implied duty of good faith and fair dealing." (Court Doc. 294 at 2-3.) Defendants argue that the jury's findings are "unreasonable" and

-5-

therefore the Court should enter judgment as a matter of law in their favor.  (*Id.*)

In their instant motion, Defendants purport to move pursuant to Federal Rule of Civil

Procedure 50(b) which provides:

> If the court does not grant a motion for judgment as a matter
> of law made under Rule 50(a), the court is considered to have
> submitted the action to the jury subject to the court's later
> deciding the legal questions raised by the motion.  No later
> than 10 days after the entry of judgment – or if the motion
> addresses a jury issue not decided by a verdict, no later than
> 10 days after the jury was discharged — the movant may file
> a renewed motion for judgment as a matter of law and may
> include an alternative or joint request for a new trial under Rule
> 59.  In ruling on the renewed motion, the court may:
>
> (1)     allow judgment on the verdict, if the jury returned a
>         verdict;
> (2)     order a new trial; or
> (3)     direct the entry of judgment as a matter of law.

Fed. R. Civ. Proc. 50(b). "Because the Rule 50(b) motion is only a renewal of the preverdict

motion, it can be granted only on grounds advanced in the preverdict motion."  *Ford v.

County of Grand Traverse*, 535 F.3d 483, 490 (6th Cir. 2008) (quoting Fed. R. Civ. Proc.

50 advisory committee's note).  "It is too late to complain of the submission of an issue to

the jury after a litigant has taken a chance on what the jury will do and after the jury has

resolved the issue against him."  *Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422,

426 (6th Cir. 1993).

With regard to the duty of good faith and fair dealing, the only argument put forth

by Defendants in their Rule 50(a) motion – made at the close of Plaintiff's evidence and

renewed at the close of Defendants' evidence – was a sufficiency of the evidence

argument.  Defense counsel argued that the duty of good faith and fair dealing "hasn't

been hit on much" and that Defendants were "not exactly sure how [Plaintiff] intend[s] to present it to the jury" but that there was no evidence to support Plaintiff's claim. (Trans. 1271.) The Court and defense counsel then engaged in a discussion about the evidence Plaintiff had presented that could arguably sustain a finding of the breach of the duty of good faith and fair dealing. (*Id*. at 1271-76.) Defense counsel made no mention of the argument they now put forth – that it would be legally impermissible and/or inconsistent to allow the jury to find both that the Agreement had been properly terminated and that Defendants had breached their duty of good faith and fair dealing.

In renewing their Rule 50(a) motion following the close of Defendants' case, defense counsel made no mention of the duty of good faith and fair dealing. Counsel reasserted that Defendants were moving on the same grounds previously raised but did not elaborate further on any issues associated with the duty of good faith and fair dealing. (Trans. 1878-87.)

Having reviewed the trial transcript, the Court concludes that Defendants failed to raise a legal argument with respect to any inconsistency in allowing the jury to find both that the Agreement had been properly terminated and that the duty of good faith and fair dealing had been breached. Having failed to raise this issue during their Rule 50(a) motion, Defendants are barred from asserting it in the instant motion. *Ford*, 535 F.3d at 492.

The Court cannot allow Defendants to raise an issue in a Rule 50(b) motion that was apparently conceived only after the jury returned their verdict. That Defendants conceived of this argument only post-verdict is supported by the fact that they failed to object during the Court's Rule 51 charge conference to the Court's instruction that explicitly allowed the

jury to find a breach of the duty of good faith and fair dealing after it found that the Defendants' termination of the Agreement was proper. *See Conseco Fin. Servicing Corp. v. North Am. Mortgage Co.*, 381 F.3d 811, 822 n.7 (8th Cir. 2004) (holding that defendant waived its argument by not raising it during trial and stating that "[i]t is apparent that North American developed the theory raised in their Rule 50(b) motion only after the jury's verdict because it (1) failed to object to the general-verdict form, (2) offered no jury instructions explaining Missouri's difficult proof standard for lost profits, and (3) made no substantive objection to the damage instruction.")

The Rule 51 charge conference was held over two days, beginning immediately after Defendants rested on their case-in-chief. On the first day of the charge conference, defense counsel questioned the formatting of the Court's proposed Verdict Form with respect to the interrogatory related to the duty of good faith and fair dealing. Defense counsel argued that a party cannot breach its duty of good faith and fair dealing by taking an action explicitly allowed under the contract and that the proposed Verdict Form did nothing to preclude such a finding. (Trans. at 1947.) The Court agreed with Defendants' statement of the law and acknowledged that it had likely structured the proposed Verdict Form incorrectly. (*Id*.)

In response to Defendants' objection, the Court substantially revised the Verdict Form. The revised Verdict From – which became the final Verdict Form after only minor adjustments – was structured such that the first five interrogatories asked the jury to make findings on whether Defendants' termination of the Agreement on March 21, 2006 was proper under one of the two disputed termination provisions. (Court Doc. 241 ¶¶ 1-5.) If, and only if, the jury found that Defendants had properly terminated the Agreement under

one of the two termination provisions, the jury was instructed to answer interrogatory six, which related to the duty of good faith and fair dealing. (*Id*.) If the jury found that Defendants had improperly terminated the Agreement, the jury would not make a finding on the breach of the duty of good faith and fair dealing because, as argued by defense counsel during the Rule 51 charge conference, such a finding would not entitle Plaintiff to any additional damages. (Trans. 1949.)

Interrogatory six of the revised Verdict Form contained the following language:

> 6. Because you have found that Defendants could properly terminate the contract under one of the termination provisions, by law, Defendants' termination of the Agreement on March 21, 2006 was not a breach of the duty of good faith and fair dealing. However, actions leading up to the termination of the Agreement or course of conduct in carrying out the terms of the Agreement could be a breach of the duty of good faith and fair dealing.
>
> Not considering Defendants' termination of the Agreement on March 21, 2006, did Defendants breach the duty of good faith and fair dealing such that it constituted a breach of contract?

(Court Doc. 241 at 2-3.) The revised version of the Verdict Form was presented to the parties prior to the second day of the charge conference. Thus, by the beginning of the second day of the charge conference, Defendants were aware that the jury was to be instructed that it could find that termination of the Agreement was proper, and yet still find a breach of the duty of good faith and fair dealing.

Defendants raised no objection to special interrogatory six or to fact that the structure of the revised Verdict Form allowed the jury to make a finding on the duty of good faith and fair dealing claim even after a finding that the Agreement was properly terminated. Instead, during the second day of the charge conference, the following

exchange took place:

| | |
|---|---|
| Mr. Greenholtz: | There is, Your Honor knows, when you go through conclusions in your mind, there is a possibility, for example, that the jury could conclude that termination was proper, but that the defendants breached their duty of good faith and fair dealing, take one example just the financial – |
| The Court: | I agree that that would be a possible verdict, and we've talked about that at some length within my chambers. I've decided that I think that, that the evidence could support that. |
| Mr. Greenholtz: | *And I agree. In theory that's exactly right*. |

(Trans. 1971) (emphasis added.) Defense counsel went on to question what damages might be available if the jury were to find a breach of the duty of good faith and fair dealing, but at no time did defense counsel argue that the jury should be precluded from finding a breach of the duty of good faith and fair dealing once it had found that termination was proper.

Having failed to raise the argument they now assert when it was squarely before them during the charge conference, it is obvious to the Court that Defendants conceived of this argument post-verdict. As such, it is improper to assert this argument in a Rule 50(b) motion.[1]  *See Ford*, 535 F.3d at 493 (holding that defendants were barred from

---

[1]     The Court also notes that Defendants have cited no authority for their contention that the jury's finding that the Agreement was properly terminated foreclosed, as a matter of law, its finding that Defendants breached their duty of good faith and fair dealing.  In fact, Defendants state: "It does not appear that any Tennessee case addressing the implied duty of good faith and fair dealing is analogous to the case at bar, *i.e.*, one in which a party had the right to terminate an agreement and any associated closing required under the agreement, but was also found to have breached the duty of good faith and fair dealing for not taking actions useful to facilitate a closing under that terminated agreement." (Court Doc. 294 at 8.)  To the extent that Defendants invite the Court to make new law on behalf of the State of Tennessee, the Court declines the invitation and notes that Defendants did not request that the Court certify any question of novel state law to the Tennessee Supreme Court.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 77

raising an issue on Rule 50(b) motion where they failed to argue it during the Rule 50(a) motion and failed to request a jury instruction clarifying their argument).

The appropriate time for Defendants to have made the argument that they now put forth would have been during the charge conference. Rule 51 allows a party to request a specific instruction and requires a party who has an objection to a proposed instruction or the failure to give a requested instruction to object on the record or any objection is waived. Fed. R. Civ. Proc. 51(c)(1). The United States Court of Appeals for the Sixth Circuit generally requires a formal objection, which should in most circumstances be made both before and after the jury instructions are read to the jury. *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1237 (6th Cir.1992). An exception to this rule occurs only when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, and the specific basis for that claimed error or omission. *Id*.

The requirement that a party object is not a mere formality, but was developed to fulfill the basic purpose of Rule 51; that is, to alert the trial judge to potential problem areas so that the jury can be clearly and correctly instructed. *Murphy v. Owens-Illinois, Inc.*, 779 F.2d 340, 346 (6th Cir.1985). "This purpose is well understood by the courts and the rule is applied in light of it. The necessity of a retrial is avoided when, by design or through sheer neglect, the losing party fails to make objection at the proper time." Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 2551 at 383-84 (1995) (footnotes

---

(1997) (federal courts may certify novel or settled questions of law to the highest court in the state); *see also* Tenn. Sup. Ct. Rule 23 § 1 (outlining the procedure for a federal court to certify a question to the Supreme Court of Tennessee). The Court would also note, however, that even had Defendants made such a request post-trial, it would have been untimely and the Court would have declined to do so.

-11-

omitted).  Thus, it must be clear, if no objection is made to an instruction during the charge conference and after the jury is charged, that the trial judge knew both that the party in fact objected to the instruction and the basis for that objection.

Defendants failed to assert a formal objection to either the instruction or the structure of the Verdict Form during the charge conference.[2]  To the extent that Defendants take issue with the Court's instructions and/or the Verdict Form, pursuant to Rule 51(c), Defendants' failure to object is fatal to their instant claim of error.  *See Johnson v. Howard*, 24 F. App'x 480, 485 (6th Cir. 2001) (holding that objections to both the jury instructions and verdict form were waived due to defendant's failure to object during trial).

Defendants' argument could also be construed as alleging that the jury's verdict was inconsistent.  To the extent that Defendants pose such argument, however, it is also untimely.  "It is well-settled that if, after answers to special interrogatories are read, a party does not object to the discharge of the jury or raise any issue with respect to the jury's responses, that party should be deemed to have waived any objection as to inconsistency, ambiguity, or lack of clarity in the answers."  *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 618 (6th Cir. 2007) (quoting *Central On Line Data Sys., Inc. v. Filenet Corp.*, 1996 WL 483031, *11 (6th Cir. Aug. 23, 1996)).  Defendants raised no objection to the verdict prior to the discharge of the jury in this case.

Accordingly, whether taken at face value as a Rule 50(b) motion, or construed as an untimely objection to the jury instructions and Verdict Form, or construed as alleging a legally inconsistent verdict, to the extent that Defendants argue that the jury's finding that

---

[2]        The Court also notes that Defendants failed to submit a proposed verdict form.  *See* Fed. R. Civ. Proc. 51(d)(1)(B) (a party may assign error to the failure to give a requested instruction).

-12-

the Agreement was properly terminated precluded a finding that they had breached the duty of good faith and fair dealing, Defendants' motion in this regard is **DENIED**.

3.     _Defendants can not prevail on their insufficiency of the evidence argument_.

As noted above, Defendants moved for judgment as a matter of law at the close on Plaintiff's case-in-chief based on insufficiency of the evidence with respect to the Plaintiff's duty of good faith and fair dealing claim.  (Trans. 1271-76.)  To the extent the instant motion is a renewal of this previously raised argument, it is timely and the Court will consider it on the merits.

The jury answered special verdict interrogatory six, quoted above, in the affirmative, thereby finding that Defendants' actions leading up to the termination of the Agreement or course of conduct in carrying out the terms of the Agreement breached the duty of good faith and fair dealing so as to constitute a breach of the contract.  (Court Doc. 241 ¶ 6.) The jury was specifically instructed that it was not to consider the March 21, 2006 termination of the Agreement when determining whether there had been a breach of the duty of good faith and fair dealing.  Because the Court must assume that the jury followed its instructions, the Court must now inquire as to whether there was evidence presented showing that Defendants' actions prior to termination or course of conduct leading up to the termination breached their duty of good faith and fair dealing.

The duty of good faith and fair dealing is not limited to the ultimate execution of the contract; rather, the parties have a duty to work in good faith on the preconditions and contingencies set forth in the contract.  _See Covington v. Robinson_, 723 S.W.2d 643, 646 (Tenn. Ct. App. 1986) (parties to a real estate contract have a duty to work in good faith

to obtain the financing set forth in the contract)*; see also Davidson & Jones Development Co. v. Elmore Development Co., Inc.*, 921 F.2d 1343, 1351 (6th Cir. 1991) (parties to a real estate contract have a good faith duty to work towards satisfying contingencies).  As the precise nature of the duty of good faith and fair dealing varies depending upon the contract in question, the Court must look to the language of the Agreement to determine what was fair and reasonable under all the facts and circumstances of the case before it.  *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987).

At trial, Plaintiff presented evidence that Defendants failed to meet a number of their obligations under the Agreement.  For example, pursuant to Section 4.1 of the Agreement, Defendants were required to give Plaintiff access to the properties that were the object of the Agreement.  (Court Doc. 127-6 at 21.)  Although the Agreement was executed on October 4, 2005, there was evidence presented at trial that Defendants denied Plaintiff access to the properties until after November 8, 2005.  As another example, Section 4.8 required Defendants to deliver financial documents to Plaintiff within twenty days following the end of an accounting period.  (*Id*. at 24.)  There was evidence presented at trial showing that Defendants repeatedly failed to meet this deadline.

More generally, at trial Plaintiff presented evidence showing that Defendants were hindering Plaintiff's attempts to execute the Agreement.  Each party to a contract has "the right to proceed free of hindrance by the other party."  *ACG, Inc. v. S.E. Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1995).  Passive (as well as active) non-cooperation can breach a party's duty of good faith and fair dealing.  *German v. Ford*, 2009 WL 604951, *12 (Tenn. Ct. App. Mar. 10, 2009).  There was evidence presented at trial that Defendants

-14-

were slow to respond, if they responded at all, to Plaintiff's attempts to work out the environmental issues attendant to the contemplated transaction. There was also evidence presented suggesting that, at some point in early March 2006, Defendants stalled the transaction in an apparent attempt to invoke the Agreement's 120 day termination provision.

Viewing the evidence in the light most favorable to Plaintiff, there was adequate evidence to support the jury's finding that Defendants' actions leading up to the termination of the Agreement or course of conduct in carrying out the terms of the Agreement breached their duty of good faith and fair dealing.

4. *A reasonable jury could have found that Plaintiff was willing to close on the Agreement as it was written*.

Defendants also argue that the Court should enter judgment in their favor because the breach of the duty of good faith and fair dealing did not deprive Plaintiff of any benefit of the Agreement because the evidence shows that Plaintiff was unwilling to close on the Agreement as it was written. (Court Doc. 294 at 9-10.) Defendants contend that no reasonable jury could have found that Plaintiff was willing to close on the Agreement until and unless the environmental issues were resolved. (*Id*. at 10.)

In support of this argument, Defendants have selectively pointed to evidence indicating that Plaintiff was hesitant to close the transaction with the environmental issues still outstanding. (Court Doc. 294 at 10-11.) On a Rule 50(b) motion, however, the proper inquiry for the Court is not whether there was evidence that weighed against the verdict. The Court must take the strongest legitimate view of the evidence in favor of the opponent of the motion, draw all reasonable inferences in his or her favor, discard all countervailing

-15-

evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the evidence as a whole. *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245, 1248 (6th Cir. 1984). "A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion." *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977).

When the Court views all of the evidence in the manner required, the evidence does not establish that Plaintiff was absolutely unwilling to close on the transaction until the environmental issues were resolved. While the evidence shows that Plaintiff wanted to resolve the environmental issues so that it would be a "clean" closing (Trans. at 354, 410), there was evidence from which a reasonable jury could conclude that Plaintiff was willing to close the transaction regardless of the status of the environmental issues. (Trans. at 835, 1157, 1224-25.)

The only issue properly raised in Defendants' Rule 50(b) motion is whether there was sufficient evidence to support the jury's finding that Defendants' breached their duty of good faith and fair dealing such that it was a breach of contract. Viewing the evidence in the manner required on the instant motion, the Court concludes that there was adequate evidence presented at trial to support the jury's verdict. Accordingly, Defendants' Motion for Judgment as a Matter of Law pursuant to Rule 50(b) is **DENIED**.

## B.     The Court Will Not Remit the Jury's Award of Damages

In the alternative, Defendants ask the Court to remit the jury's award of damages pursuant to Rule 59(a).  (Court Doc. 293 at 1.)  Initially, the Court notes that not every motion seeking to alter the jury's award of damages is properly characterized as a motion for remittitur.  *See Hill v. Marshall*, 962 F.2d 1209, 1216 (6th Cir. 1992).  "A remittitur is proper where the judge finds the damages awarded excessive."  *Mitroff v. Xomox Corp.*, 797 F.2d 271, 279 (6th Cir. 1986).  Where, as here, a party is not truly contesting the excessiveness of the damages award, but contends that the award was not supported by the evidence, the appropriate motion is one for judgment as a matter of law. *See Hill*, 962 F.2d at 1216 (where a court sets aside a damages award based on insufficient evidence it is not remitting the verdict but is entering judgment notwithstanding the verdict); *see also De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990) ("If the court believed that the jury's verdict was unsupported by the evidence, it could have granted judgment notwithstanding the verdict to defendant.  If it believed that the verdict was supportable, but that the jury's award of damages was grossly excessive, it could have fixed a remittitur amount.").

In moving the Court to "remit" the jury's damages award, Defendants argue that Plaintiff failed to prove that it suffered any damages as a result of their breach of the duty of good faith and fair dealing.  (Court Doc. 294 at 14-20.)  In so arguing, Defendants are essentially asking the Court to rule, as a matter of law, that Plaintiff failed to establish an element of its breach of contract claim – that it suffered damages as a result of the breach. In fact, at one point Defendants ask that the jury's award of damages be "vacated"

-17-

because "no proof was introduced at trial as to any damages suffered as a consequence of the breach of the implied duty of good faith and fair dealing." (*Id*. at 19-20.) Accordingly, the Court believes the instant motion is more properly characterized as one for judgment as a matter of law rather than one for remittitur. In the interest of thoroughness, however, and because Defendants explicitly state that they are moving for remittitur pursuant to Rule 59(a), the Court will analyze the instant motion under both standards.

### 1. *The Court will not remit the jury's award of damages*

"A trial court should not remit a verdict 'unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Ardingo v. Local 951, United Food & Commercial Workers Union*, 2009 WL 1528505, *12 (6th Cir. May 29, 2009) (quoting *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000)). None of these situations exist in this case.

The jury awarded Plaintiff $190,907.27 which was (coincidentally or not) the exact amount (excluding legal fees) that Plaintiff had incurred in its efforts to close the transaction. (Trial Ex. 39.) The award was not, therefore, beyond the range supportable by proof. Nor was it so excessive as to shock the conscience of the Court because the total value of the transaction – had it been completed – was in excess of $15,000,000. (Court Doc. 290 at 11.) In this context, an award of $190,907.27 – just over one percent of the value of the transaction – is not excessive. Nor was there any allegation or evidence showing that the jury's verdict was the result of mistake. In fact, the jury awarded Plaintiff the exact amount – down to the penny – that it had expended on transaction costs prior to the Defendants' termination of the Agreement. It is hard to imagine that, in this context,

the damage award was the result of a mistake.

"If there is any credible evidence to support a verdict, it should not be set aside." *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990). Where the amount of damages awarded by the jury is the exact amount testified to at trial, even though that testimony was disputed, it is an abuse of discretion to remit the verdict. *Id*. Because there was evidence presented at trial that Plaintiff incurred expenses in the amount of $190,907.27 and that jury awarded Plaintiff only that amount, Defendants have failed to show that there is any basis for remittitur here. Accordingly, to the extent that Defendants move for remittitur pursuant to Rule 59(a), such motion is **DENIED**.

> 2. *Defendant is not entitled to judgment as a matter of law on the damages award.*

Defendants argue that there was no evidence presented at trial showing that the damages awarded by the jury were a consequence of the breach of the duty of good faith and fair dealing. (Court Doc. 294 at 14-15.) As discussed above, the Court construes this argument as one for judgment as a matter of law on Plaintiff's breach of contract claim because Defendants are essentially arguing that, based on the evidence presented at trial, no reasonable jury could find that Plaintiff suffered any damages (and certainly not $190,907.27) as a result of Defendants' breach of the duty of good faith and fair dealing.

As discussed above, in moving for renewed motion as a matter of law pursuant to Rule 50(b), a party cannot raise issues not previously raised during their Rule 50(a) motion. During trial, Defendants asserted two bases for why they were entitled to judgment as a matter of law as to damages: (1) that Plaintiff had failed to show that a closing would occur even absent Defendants' termination of the Agreement and, therefore, Plaintiff had failed

-19-

to show that it had suffered any damages as a result of the termination; and (2) that Plaintiff's proof as to damages – specifically lost profits – was speculative and unreasonably uncertain. (Trans. at 1277.) Although neither of these arguments is precisely what Defendants now claim, they were sufficient to alert Plaintiff and the Court that Defendants challenged Plaintiff's showing that its damages were caused by Defendants' actions. Plaintiff was afforded the opportunity to present further evidence on causation as it related to damages and the Court was able to instruct the jury appropriately. Accordingly, the Court concludes that Defendants preserved this issue for Rule 50(b) purposes. *See Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 361 (6th Cir. 2006) (where Rule 50(a) motion provides "notice to the court and opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury," the purpose of Rule 50(a) has been met and the party is free to renew the argument in a Rule 50(b) motion).

Having found that Defendants' argument is properly raised in a Rule 50(b) motion, the Court must address the merits – that is, whether a reasonable jury could have found that Plaintiff established that its damages resulted from Defendants' breach of the duty of good faith and fair dealing. With regard to a breach of contract claim, the jury was instructed that Plaintiff was required to prove three elements by preponderance of the evidence: (1) that there was a valid contract; (2) that Defendants had breached the contract; and (3) that Plaintiff suffered damages "as a result of that breach." (Trans. at 2094-95.) The parties stipulated that they had entered into a valid contract thereby satisfying the first element of Plaintiff's breach of contract claim. (Court Doc. 234 at 2.) In response to special interrogatory six on the Verdict Form, the jury found that Defendants breached their duty of good faith and fair dealing such that it was a breach of contract

-20-

which, as discussed above, was supported by the evidence. (Court Doc. 241 at 3.)

Accordingly, the issue here is whether there was adequate evidence to allow a reasonable

jury to find that Plaintiff had met its burden as to the third element of its breach of contract

claim – that it suffered damages as a result of Defendants' breach.

With regard to damages, the jury was instructed as follows:

> The purpose of awarding damages in a breach of contract case is to put the plaintiff in the same position that it would have been had the contract not been breach by defendants. Plaintiff is not entitled to be put in a better position by a recovery of damages for breach of contract than it would have been if defendants had fully performed the terms of the contract. The damages to be awarded are those that may fairly and reasonably be considered as arising out of the breach or those that may reasonably have been in the contemplation of the parties when the contract was made.

> If you find that there was a breach of contract, you are not required to award damages to the plaintiff. Plaintiff must prove, to a reasonable degree of certainty, that it suffered damages as a result of defendants' breach of contract. If you do not believe that plaintiff has proven that it was injured by the breach of contract, you should not award damages.

> If you find that the evidence that plaintiff presented on damages is too remote or speculative, you should not award damages. Plaintiff's damages are not speculative or remote merely because you are uncertain about the exact amount of damages that you should award. Damages are speculative only if you find that plaintiff has not proven the existence of damages to a reasonable degree of certainty. If you find that plaintiff has proven the amount of damages that it suffered to a reasonable degree of certainty, you may award damages for defendants' breach of contract.

(Trans. at 2101-02.) The jury answered special interrogatory seven on the Jury Verdict

Form as follows:

7. Has Plaintiff proven to a reasonable degree of certainty that it suffered damages as a result of Defendants' breach of the duty of good faith and fair dealing?

Yes _____X_____ No _____

If Yes, what amount? (Please answer in dollars and cents.)

$190,907.27

(Court Doc. 241 at 3.) Defendants raised no objection to the above-quoted jury instructions and/or the special interrogatory on the Verdict Form. (Trans. at 1942.) In fact, the wording of special interrogatory seven was suggested by defense counsel. (*Id*. at 1972.) In the instant motion, Defendants do not assert that the jury was incorrectly instructed or that there was an error in the Court's Verdict Form as to damages.

Instead, Defendants argue that Plaintiff presented no evidence tying the damages they incurred to the breach of the duty of good faith and fair dealing. Even taking that statement as true, however, it is not dispositive of the instant motion. Plaintiff's trial strategy was obviously focused on showing that Defendants' termination of the Agreement was a breach of contract because it was the much more lucrative claim. The alleged breach of the duty of good faith and fair dealing unquestionably played a smaller part in Plaintiff's trial strategy. Regardless, as discussed above, Plaintiff presented adequate evidence to support the jury's finding that Defendants breached their duty of good faith and fair dealing. So long as Plaintiff also presented adequate evidence showing that they suffered damages in the amount of at least $190,907.27, the jury was free to conclude that these damages were suffered as a result of the breach of the duty of good faith and fair dealing even if Plaintiff did not present the evidence specifically in that manner. As

-22-

previously noted, the jury is not bound by either party's particular theory of the case when reaching its verdict.

Defendants argue that "[t]he parties and the Court know well why the jury awarded the Plaintiff the transaction expenses identified in Exhibit 39. The jury was certainly not attempting to identify damages that were incurred by the Plaintiff as a result of not supplying information needed to facilitate a closing. To the contrary, the jury was attempting to 'effectively restore[] Plaintiff to the financial position that it held prior to entering into the Agreement." (Court Doc. 294 at 18.)

The Court cannot agree with Defendants' contention. Although the Court has previously observed that the jury's award of damages had the effect of "restor[ing] Plaintiff to the financial position that it held prior to entering into the Agreement," the Court has never presupposed that it "knew" how or why the jurors arrived at the damages award. (*See* Court Doc. 251 at 12.) In fact, neither the Court nor the parties are entitled to know how or why the jury arrived at its verdict and the damages awarded. *See* Fed. R. Evid. 606(b) (juror is precluded from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith."); *see also Rushen v. Spain*, 464 U.S. 114, 121 n.5 ("[A] juror generally cannot testify about the mental process by which the verdict was arrived.") Once a verdict has been rendered, it is improper to inquire into the jury's interpretation of its instructions or the jury's deliberative process. *United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995) ("A jury's interpretation

-23-

and application of the court's instructions is a part of the deliberative process and was correctly excluded under Rule 606(b).").

As previously noted, the Court must assume that the jury followed its instructions. *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001). Given the phrasing of special interrogatory seven on the Verdict Form, coupled with the Court's instructions regarding damages, there is no reason to suspect that the jurors awarded Plaintiff damages for anything other than what they found had been proven to have resulted from the Defendants' breach of the duty of good faith and fair dealing.

Ultimately, no one but the jurors themselves knows how or why they chose to award Plaintiff $190,907.27 for Defendants' breach of the duty of good faith and fair dealing. The Court's sole inquiry is whether, taking the strongest legitimate view of the evidence in favor of Plaintiff, allowing all reasonable inferences in its favor, and discarding all countervailing evidence, a reasonable juror could find that Plaintiff suffered $190,907.27 as a consequence of Defendants' breach of the duty of good faith and fair dealing.

Having listened to and reviewed the evidence presented at trial, the Court concludes that it supports the jury's verdict. There was evidence presented that Defendants knew, as early as October 2005, that Burger King was going to require Defendants to expend in excess of $200,000 in order to approve the transaction. (Trans. at 1514, Tr. Ex. 518, 519.) Moreover, there was evidence showing that, at least by November 8, 2005, Defendants had expended in excess of $30,000 on repairs and maintenance and, at the same time, Burger King issued its consent form stating that it would require Defendants to place $98,800 in escrow at closing. (Tr. Exs. 522, 527; Trans. 1515, 1649.) Because the amount already expended and the amount required in escrow totaled more than $100,000,

-24-

Defendants arguably knew – at least by November 8, 2005 – that they would be able to terminate the Agreement pursuant to Section 9.1(g).

Defendants prevented Plaintiff from conducting any meaningful due diligence until after they obtained the Burger King consent form on November 8, 2005. Accordingly, when Defendants became aware of the possibility that they could terminate the Agreement pursuant to Section 9.1(g), Plaintiff had spent little, if any, money on this transaction. There was evidence that approximately ninety percent of Plaintiff's costs were incurred after December 1, 2004. (Trans. at 508.) Although Defendants knew that they could terminate the Agreement without breaching the contract, they did not exercise their right to terminate until March 21, 2006 – after Plaintiff had spent $190,907.27 on the transaction.

"The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Wilhite v. Bronsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990). Had Defendants disclosed their knowledge and intentions about the amount Burger King was requiring them to expend on repairs in order to approve the transaction, Plaintiff may have been able to avoid all of the $190,907.27 it expended prior to Defendants' termination of the Agreement. Although the jury's award of damages is at the upper limit of the range of reasonableness, the Court finds that it still falls within the realm of a reasonable jury verdict in this case. *See Katch v. Speidel Div. of Textron, Inc.*, 746 F.2d 1136, 1144 (6th Cir. 1984) (remittitur inappropriate unless damages exceed the "minimum limit of reasonable range"). Accordingly, Defendants' Motion for Remittur is

**DENIED**.[3]

## IV.    CONCLUSION

For the reasons discussed above, Defendants' Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for Remittur [Court Doc. 293] is **DENIED**.

SO ORDERED this 22nd  day of July, 2009.

_/s/Harry S. Mattice, Jr._
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

[3]     As a postscript, the Court would observe that immediately after the jury was excused, it stated: "I believe that given this particular verdict that this is the end of the proceedings." (Trans. at 2126.) Although over fifty documents have been filed in this case since the jury returned its verdict, including hundreds of pages of argument on the parties' numerous post-trial motions, the Court remains unconvinced that its original observation was not, at least in its essence, accurate.